WAIAKEA MILL COMPANY *v.* EDDIE VIERRA, ET AL.

No. 2435.

SUBMITTED JANUARY 26, 1940.          DECIDED JULY 26, 1940.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE STAFFORD IN PLACE OF KEMP, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

In the year 1921 the commissioner of public lands of the Territory of Hawaii, called "the commissioner," entered into what is designated "Special Homestead Agreement No. 1901" with Mrs. Hannah Vierra. By the terms of the agreement the commissioner undertook to convey to Mrs. Vierra a fee simple title in and to house lot 20, block 802, and homestead lot 7, section B, of the Waiakea Homesteads at Hilo, Hawaii, upon compliance by her of all the provisions of said special homestead agreement. In 1932 Mrs. Vierra died intestate leaving surviving her Eddie Vierra, her widower, and John Makaimoku, John H. Iopa, Paul Iopa, George Iopa and Eddie Vierra, Jr., her children. At the time of Mrs. Vierra's death the homestead agreement was in full force and it is not questioned that up to that time she had complied with those provisions of the contract requiring the continuous maintenance of a home on the property for a period of at least five years, the cultivation of the land and the planting and maintenance of trees upon the residence portion in compliance with the provisions of the contract and had performed all of the other covenants of the agreement on her part to be performed, although the final installment of the monetary consideration for the property, which would entitle her to a patent, had not yet been paid. There was also outstanding at the time a written contract between her and the Waiakea Mill Company, which con-

552

tract commenced in 1922 and terminated in 1938. By the terms of the contract the Waiakea Mill Company was to take possession of said lot 7, section B, and cultivate and bring to maturity successive crops of sugar cane and as such crops became mature to harvest and to process the same into raw sugar and to sell the sugar at the prevailing price and from time to time to render to Mrs. Vierra written statements of account. Mrs. Vierra was to receive from the Waiakea Mill Company for the use of the property a stipulated percentage of gross returns received from the sale of the raw sugar produced from the sugar cane grown on her homestead lot.

In August, 1937, the Waiakea Mill Company, being indebted to whomsoever might be the legal successor or successors to the rights of Mrs. Vierra under the contract with her as aforesaid and being uncertain as to whom it should make settlement of its obligations growing out of said contract, filed a suit in equity in the circuit court of the fourth judicial circuit pursuant to chapter 118, R. L. H. 1935, by which it prayed "that a declaratory judgment shall be entered herein declaring that the said Sections 1598 and 1630 are in all respects valid and that they govern and apply to the case stated, and said Sections determine the descent of the property left by the deceased and that title to said land and said contract vested in Eddie Vierra."

Eddie Vierra, the widower, filed his answer claiming the property by descent pursuant to the provisions of sections 1598 and 1630, R. L. H. 1935. L. M. Whitehouse, the land commissioner, in his answer supported the claims of Vierra. Eddie Vierra, Jr., through his guardian *ad litem*, appeared and claimed a one-fifth interest in the property and the other four children of Mrs. Vierra in their answer asked that they, together with their brother Eddie Vierra, Jr., be adjudged the owners of the property

as tenants in common subject to the right of curtesy in Eddie Vierra, Sr., as the surviving husband of Hannah.

The cause coming on before the circuit judge upon the pleadings and the stipulation of the parties and there being no questions of fact involved, the judge entered an order reserving for the consideration of this court the following questions of law: "*Question No. 1*: Do the five children of Hannah Vierra, deceased, succeed to the rights of their mother in and to said Special Homestead Agreement #1901 by virtue of that provision in the said Special Homestead Agreement which provides that 'the "purchaser" shall be held to mean the said Mrs. Hannah Vierra, her heirs and those who shall lawfully hold under her' notwithstanding the provisions of Section 1598 R. L. H. 1935? *Question No. 2*: Was the enactment of Act 160 of the Session Laws of 1929 (Section 1598 R. L. H. 1935) an attempt on the part of the Territorial Legislature to change the laws relating to public lands and therefore invalid legislation as being in violation of Section 73 of the Organic Act of the Territory of Hawaii?"

Briefs on the reserved questions have been filed in this court in behalf of the Waiakea Mill Company, the commissioner of public lands and the adult children of Mrs. Vierra.

In the opening paragraph of the agreement Mrs. Vierra is referred to as the "purchaser" but a subsequent paragraph broadens this designation and specifically provides that "the purchaser shall be held to mean the said Mrs. Hannah Vierra her heirs and those who shall lawfully hold under her." Another clause in the agreement prohibits the purchaser from conveying, mortgaging, leasing or transferring the property before patent without the written consent of the commissioner of public lands and of the government of the Territory. At the time the agreement was entered into the children of Mrs. Vierra

were presumptively her heirs (see section 4813, R. L. H. 1935), and as such, pursuant to section 4810, R. L. H. 1935, would, in the event of their mother's death intestate, become the owners of the property by descent, subject to the curtesy right of the husband reserved to him under section 4830, R. L. H. 1935. In 1929 the legislature passed an Act entitled: "An Act to amend chapter 40 of the Revised Laws of Hawaii 1925, relating to public lands, by adding thereto a new section to be known as section 529-A." This Act provides that "in case of the death of any owner of the legal title to any homestead agreement, special homestead agreement, right of purchase lease, cash freehold agreement, or special sale agreement, in the absence of any devise or bequest, the land so held shall vest in the relations of the decedent in the manner set forth in Section 505." This Act, whether it may be considered a law relating to public lands or one relating to descent, purports to give to the widow or widower of the holder of a special homestead agreement who might die intestate priority over the children of such homesteader. In other words, the widow or widower would inherit to the exclusion of the children of the deceased homesteader.

Counsel for the adult children urge that the legislature, by the Act of 1929 (now section 1598, R. L. H. 1935), could not have intended that the statute should be retroactive nor that it should affect the rights of parties under the terms of a written contract entered into prior to its enactment; that the Act must be held to have merely a prospective application; that otherwise the statute would contravene the provisions of section 10 of article I of the Federal Constitution which prohibits the enactment of any law impairing the obligation of contracts. Counsel further argue that if the Act is a statute, as its title indicates, relating to public lands, it is void because it violates section 73 of the Organic Act which reserves

exclusively to Congress the authority to legislate in respect to the public lands of the Territory. Counsel further urge, however, that if it can be said that the Act of 1929 merely changed the law of descent, then the Act is void because it fails to comply with section 45 of the Organic Act which in mandatory language requires that "each law shall embrace but one subject, which shall be expressed in its title." (*In Re Goddard, ante,* p. 203.)

The contract was without doubt executed with the knowledge on the part of both contracting parties of the existing laws of descent and it was their intention, by defining the word "purchaser" as including the heirs of Mrs. Vierra, to designate a class to which the property would descend in the event of her death intestate. The members of this class would of course be ascertained at the time of the death of Mrs. Vierra. If it be conceded that the legislature possessed the power to vary the terms of the contracts and set up a new class of takers to the exclusion of the children of Mrs. Vierra in the event of her death (a point which we do not decide), the intention of the legislature to so do must clearly appear in the legislative Act. The effect of such a statute would be manifestly unfair and unjust to the parties to the contract. In *Rathburn* v. *Kaio,* 23 Haw. 541, this court said: "If a literal interpretation of the language used in a statute would lead to palpable injustice the courts will search for a more reasonable meaning of the language which will also accord with the spirit of the enactment."

The Act of 1929 contains no language indicating that it was the purpose of the legislature to give to it retrospective application. It provides that the Act shall take effect upon its approval. It was approved April 30, 1929. "Where, by its terms, a statute is * * * to take effect at a fixed future date * * * it is prospective only in operation." 59 C. J. 1159.

We conclude therefore that it was the intention of the legislature to confine the application of the Act of 1929 to special homestead agreements entered into subsequent to the effective date of the Act.

The expression "those who shall lawfully hold under her" used in the contract was, we think, intended to refer to such person or persons, if any, as might, with the written consent of the commissioner of public lands and the governor, succeed to the rights of Mrs. Vierra in the homestead property by way of conveyance, mortgage, etc., executed pursuant to the provisions of the contract. But Mrs. Vierra did not convey nor encumber the property, hence the paragraph in question has no application to the issues in the case at bar.

Reserved question No. 1 is answered in the affirmative.

Basing our answer to question No. 1 on what we believe to be a reasonable construction of the purpose and effect of Act 160, Haw. Laws 1929, we deem it unnecessary to decide whether said Act is or is not valid legislation, hence question No. 2 is returned unanswered.

*Irwin & Harlocker* for some of the respondents.

*E. N. Sylva*, Deputy Attorney General, for the commissioner of public lands.

*Carlsmith & Carlsmith* for Waiakea Mill Company.